ATTEST
A True Copy

This the _____ day of
_November_ 20_17_

Office of the Clerk
Supreme Court and Court of Appeals
State of Mississippi

By _____ Deputy Clerk

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

NOV 16 2017

ARTHUR JOHNSTON
BY _____ DEPUTY

**FILED**

NOV 15 2017

OFFICE OF THE CLERK
SUPREME COURT
COURT OF APPEALS

## SUPREME COURT OF MISSISSIPPI
### (BEFORE A COMPLAINT TRIBUNAL)

**THE MISSISSIPPI BAR**                                                        **COMPLAINANT**

**v.**                                                  **CAUSE NO. 2017-B-00846**

**KENNETH J. GRIGSBY**                                                         **RESPONDENT**

## OPINION
## AND FINAL JUDGMENT

The Tribunal having convened on November 2, 2017, beginning at 10:00 a.m. in the Circuit Court in the Claiborne County Courthouse located in Port Gibson, Mississippi and the Mississippi Bar having appear through Counsel and the Respondent having appeared in person and presented the evidence and arguments to the Tribunal, the parties having been invited to provide respective Proposed Findings of Fact and Conclusion of Law within 7 days of the conclusion of the Tribunal hearing, the Mississippi Bar having submitted its Proposed Findings of Fact and Conclusion of Law, and the Respondent having failed to submit any Proposed Findings of Fact and Conclusions of law, within the time permitted, and the Tribunal having heard and considered the evidence, testimony, arguments and submissions by the Petitioner and the Respondent now must and does hereby render its Opinion and Final Judgment, as follows, to wit:

## FINDINGS OF FACT

This Tribunal has jurisdiction over the parties and subject matter under Rule 8 of the Mississippi Rules of Discipline for the Mississippi State Bar ("MRD"). Kenneth J. Grigsby ("Mr. Grigsby") was admitted to the practice of law in Mississippi in 2000. At all relevant times in this matter, Mr. Grigsby was an active member of the Bar in good standing and subject to the disciplinary jurisdiction of the Supreme Court of Mississippi

1

Ms Bar v. Grigsby                                    Opinion and Final Judgment

and its designated agencies. The Mississippi Bar is a designated disciplinary agency pursuant to the Rule 3, MRD. Its mailing address is Post Office Box 2168, Jackson, Mississippi 39225-2168. The Formal Complaint was filed on June 19, 2017, pursuant to a directive from the Committee on Professional Responsibility of the Bar to the Bar's General Counsel as contemplated by Rule 7(b)(iii), MRD.

On or about December 9, 2013, an informal [Bar] complaint against Mr. Grigsby was filed by Adam Kilgore in his capacity as General Counsel after receiving information from Chancellor Vincent Davis alleging Mr. Grigsby failed to safekeep funds owed to an estate and misrepresented to the court the location of those funds. A true and correct copy of Mr. Kilgore's informal Bar complaint was attached to the Formal Complaint as Exhibit "A".

In July of 2012, Mr. Grigsby was retained by Cleo Norwood, one of the heirs of Mary Neal, to prepare a timber cutting contract. Mr. Grigsby executed the timber cutting contract on July 17, 2012 as the attorney for and on the behalf of the Robert and Mary Neal Estate. At the time Mr. Grigsby prepared and executed the contract he was aware that the land on which the timber sat was titled in Mary Neal. Mary Neal died in 1965. Mr. Grigsby relied on the representation of Mr. Norwood that an estate had been opened for Mary Neal and did no independent investigation until certain heirs began to request their money from the timber sale. Mr. Grigsby made no attempt to seek approval of the timber contract by the Estate of Mary Neal before execution thereof and acceptance of the funds on behalf of the estate. At the time the contract was executed no determination of heirs had been made by a court.

2

On September 25, 2012, despite not having Court authority to do so, Mr. Grigsby received the timber proceeds by wire transfer in the amount of $150,000.00 from Theoppluis Gibson to Mr. Grigsby's operating account. Mr. Grigsby also received a cashier's check that same date in the amount of $19,540.00 made payable to Law Office of Kenneth Grigsby which he negotiated and deposited into his firm operating account. These funds were not placed into either an account for the Estate of Mary Neal nor placed into an IOLTA trust account in trust for the Estate. On October 1, 2012, without Court authority, Mr. Grigsby at the direction of only three of the heirs of Mary Neal, disbursed $14,008.00 by cashier's check to George Gibson for work performed in connection with cutting the timber. Grigsby testified he used a check from his and his wife's personal account to purchase a cashier's check payable to Mr. Gibson. In testimony that still does not make sense, he claimed he transferred funds from his trust account to his personal account for this purpose. He also obtained a cashier check for the filing fee to open the estate of Mary Neal in the Chancery Court of Claiborne County. He initially and falsely testified he withdrew the funds from his "trust" account and deposited them into personal account in order to then purchase cashier's check make these disbursements.

When he finally determined no estate had ever been established for Mary Neal, he filed a petition to open the estate of Mary Neal, Mr. Grigsby stated the only asset of the estate was 150 acres of timber in Claiborne County. This petition neglected to truthfully disclose to the Court that he and the heirs had already signed a contract for the 150 acres of timber and Grigsby had received the funds. He later amended the petition to disclose the timber contract and that actually had received the sale proceeds on behalf of the estate. A dispute arose among the heirs and at least one of the heirs retained new

Ms Bar v. Grigsby                                          Opinion and Final Judgment

counsel. New counsel filed a motion to have certain property of the estate turned over, namely the timber proceeds. On September 5, 2013, Chancellor Davis entered an order appointing Tomika Irving as administratrix of the estate and directing Grigsby to tender all assets, including the timber proceeds, to Ms. Irving within seven days. Grigsby did not comply with the Chancellor's order. When Ms. Irving had not received the timber proceeds from Mr. Grigsby despite two attempts by letter, she filed a motion for contempt on October 14, 2013. On October 22, 2103, Chancellor Davis entered a show cause order setting the motion for contempt for November 12, 2013.

On October 25, 2013, Mr. Grigsby filed, at best, a misleading Accounting under oath with the Chancery Court. This Accounting falsely represented that the Estate had received funds from the timber contract, but did not reveal any disbursements therefrom. See Miss. Code §91-7-277, §91-7-279, §93-13-67, and §93-13-71 and UCCR 6.04 and 6.05. On November 11, 2013, Mr. Grigsby delivered two post-dated checks to Ms. Irving. One check was dated November 12, 2013 in the amount of $5,540,00 and the second was dated November 15, 2013 in the amount of $150,000.00. Neither of these checks indicated that they were drawn on an IOLTA trust account or an Estate account for Mary Neal, but appeared to be Grigsby's law firm operating account. Both post-dated checks were drawn on a closed account and therefore returned by the bank unpaid because the account was closed. On November 19, 2013, Grigsby then tendered two official bank cashier's checks to Ms. Irving. One was in the amount of $5,540 from BancorpSouth. The BancorpSouth check indicates the remitter is Mablean Grigsby, Mr. Grigsby's mother. The second check was in the amount of $150,000.00 was from Renasant Bank. Grigsby falsely claimed that the $150,000.00 represented by the Renasant Bank check was, in

Ms Bar v. Grigsby                                                    Opinion and Final Judgment

fact, the timber funds held in trust for the Estate. However, at that time, he admitted he had to obtain the funds of $5,540.00 from an account he claimed was a joint account with his mother because he did not have sufficient funds in trust for entire amount.

Mr. Grigsby falsely maintained throughout the Claiborne County Chancery Court estate proceedings, these disciplinary proceedings, and testified at the trial in this matter initially that the estate's timber proceeds were deposited into his trust account and remained in his trust account until turned over to the administratrix of the estate in November of 2013. These ultimately was admitted not to be true by Grigsby. At the conclusion of his testimony before the Tribunal, the Tribunal requested that Grigsby sign an authorization to permit the Bar and the Tribunal to obtain his banking records on all of the accounts involved in the Neal estate transaction, as his testimony was simply not consistent with the various transactions involved. Mr. Grigsby finally admitted the funds were never placed in a trust account and were actually converted to his own use. He admitted that he was forced to use a line a credit at the Renasant Bank, to repay the estate funds which he had spent. Mr. Grigsby ultimately, after several hours of questioning by counsel for the Bar and the members of the Complaint Tribunal, admitted he converted the estate fund in order to pay business and other client expenses. The Tribunal finds that not only did Grigsby convert client trust funds to his own use but he actively misled the Chancery Court, during its proceedings, and clearly the Bar and the Tribunal during several hours of testimony.

During the Formal Bar complaint process, the Bar requested Mr. Grigsby's trust account records during discovery. Mr. Grigsby failed to produce those records despite a Motion to Compel and Order from the Tribunal. At trial Mr. Grigsby also admitted that he

Ms Bar v. Grigsby                                    Opinion and Final Judgment

did not and does not possess trust account records that would indicate the ownership of any funds in his trust account.

On July 15, 2016, James Washington filed an informal Bar complaint against Mr. Grigsby alleging Mr. Grigsby neglected the estate matter he was hired to handle. Mr. Washington also alleged he had difficulty communicating with Mr. Grigsby. A true and correct copy of Mr. Washington's informal Bar complaint was attached to the Formal Complaint as Exhibit "B."

On October 10, 2016, James Washington filed a second informal Bar complaint against Mr. Grigsby alleging after he filed the first informal Bar complaint, Mr. Grigsby agreed to refund his retainer but failed to do so. A true and correct copy of Mr. Washington's second informal Bar complaint was attached to the Formal Complaint as Exhibit "F."

The Bar sent Mr. Grigsby demands that he respond to Mr. Washington's first informal complaint on July 15, 2016; August 5, 2016; September 6, 2016; September 8, 2016; September 12, 2016; November 18, 2016; and November 30, 2016. The Bar sent Mr. Grigsby demands that he respond to Mr. Washington's second informal complaint on October 11, 2016; November 18, 2016, and November 30, 2016. Mr. Grigsby admitted he received both of Mr. Washington's complaints. Mr. Grigsby also admitted that the Bar's demands for a response to both of Mr. Washington's complaints were sent to the address he provided the Bar. Mr. Grigsby further admitted that he did not respond to Mr. Washington's complaints or the Bar's demands for a response in any way.

On September 19, 2016, Craig Haynes filed an informal [Bar] complaint against Mr. Grigsby alleging neglected Mr. Haynes criminal matter. Mr. Haynes also alleged he

6

had difficulty communicating with Mr. Grigsby. A true and correct copy of Mr. Haynes's informal Bar complaint was attached to the Formal Complaint as Exhibit "D."

The Bar sent Mr. Grigsby demands that he respond to Mr. Haynes's complaint on September 19, 2016; November 18, 2016; and December 1, 2016. Mr. Grigsby admitted he received Mr. Haynes's complaints. Mr. Grigsby also admitted that the Bar's demands for a response to Mr. Haynes's complaint were sent to the address he provided the Bar. Mr. Grigsby further admitted that he did not respond to Mr. Haynes's complaint or the Bar's demands for a response in any way.

On October 13, 2016, Bobby Evans filed an informal Bar complaint against Mr. Grigsby alleging he neglected an estate matter. Mr. Evans also alleged he had difficulty communicating with Mr. Grigsby. A true and correct copy of Mr. Evans's informal Bar complaint was attached to the Formal Complaint as Exhibit "H."

The Bar sent Mr. Grigsby demands that he respond to Mr. Evans's informal complaint on October 13, 2016; November 18, 2016; and November 30, 2016. Mr. Grigsby admitted he received Mr. Evans's complaint. Mr. Grigsby also admitted that the Bar's demands for a response were sent to the address he provided the Bar. Mr. Grigsby further admitted that he did not respond to Mr. Evans's complaints or the Bar's demands for a response in any way.

Mr. Grigsby provided the Tribunal with no evidence in mitigation of his misconduct.

The Bar incurred costs and expenses in the investigation of the informal complaint in the amount of $150.00. In addition, the Bar has incurred court costs and other expenses with regard to the filing of the Formal Complaint.

7

At the conclusion of testimony at trial, the Tribunal granted the Bar's Motion to Amend the Pleadings to conform to the evidence presented at trial to add allegations that Mr. Grigsby's conduct also violated the Rules 1.15(b) and 3.3(a) of the Mississippi Rules of Professional Conduct.

## CONCLUSIONS OF LAW

By his conduct, Mr. Grigsby violated the following provisions of the Mississippi Rules of Professional Conduct ("MRPC"):

### Rule 1.15(a), MRPC

Rule 1.15(a) provides that a lawyer shall hold the property of clients and third parties separate from the lawyer's own property in a separate trust account and safekeep the client's property. The rule also provides complete records of such trust account funds shall be kept and preserved by the lawyer for a period of seven years after termination of the representation. Rule 1.15(a), MRPC. The rule essentially prohibits the commingling of the lawyer's funds with those of his clients and third parties entrusted to him by virtue of his representation. *Miss. Bar v. Coleman*, 849 So. 2d 867, 875 (Miss. 2002). Commingling is the "cardinal sin" of the legal profession, whether or not it is intentional. *Id.* at 876. The Court has previously explained that whenever a lawyer commingles his funds with his clients he can always claim that any check he wrote for his personal benefit came from his money in the account as opposed to the client's money, and there often no way to prove otherwise. *Miss. State Bar Assn v. Moyo*, 525 So. 2d 1289, 1297 (Miss. 1988). This is why comingling is an unethical practice of the most serious order and conversion is inferred from the commingling. *Id.*

8

Ms Bar v. Grigsby                                                    Opinion and Final Judgment

When a lawyer receives funds belonging to another, deposits those funds into his trust account and prior to disbursement the trust account shows a total deposit less than the amount entrusted, the attorney has converted funds to an unauthorized use. *Reid v. Miss. State Bar*, 586 So. 2d 786, 788 (Miss. 1991). Restitution of funds previously misappropriated does not mitigate the offense. *Cotton v. Miss. Bar*, 809 So. 2d 582, 587 (Miss. 2000).

Mr. Grigsby received the timber proceeds on behalf of the estate of Mary Neal. Mr. Grigsby failed to place these funds in a trust account. Mr. Grigsby instead commingled the estate funds in his firm operating account. Further, Mr. Grigsby disbursed estate funds without the approval of the Chancery Court. Mr. Grigsby converted estate funds for his own benefit to pay business and other client expenses. Mr. Grigsby's restitution of the estate funds from funds owned jointly with his mother and from a bank line of credit was made only after ordered to do so by Chancellor Davis.

Mr. Grigsby also failed to keep any records for his trust account that would indicate the ownership of any of this funds in his trust account at any point in time. Mr. Grigsby's conversion of the estate funds and failure to keep the proper trust account records is a violation of Rule 1.15(a).

### Rule 1.15(b), MRPC

Rule 1.15(b) provides that upon receiving funds in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to the client or third person any funds the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting. Mr. Grigsby failed to timely deliver the estate funds to the administratrix of

9

the estate despite being ordered by Chancellor Davis to do so.  Mr. Grigsby also failed to

provide a complete accounting to the Chancery Court of Claiborne County.  Mr. Grigsby's

failure to timely deliver those funds and his failure to account for the funds received is a

violation of Rule 1.15(b).

### Rule 3.3(a), MRPC

Rule 3.3(a) provides that a lawyer shall not knowingly make a false statement of

material fact or law to a tribunal.  Mr. Grigsby knew he had not placed the proceeds of the

timber contract in his trust account.  Mr. Grigsby knew that he had in fact converted those

estate funds.  However, Mr. Grigsby stated to the Chancery Court of Claiborne County

and this Tribunal that the funds were placed in his trust account and remained there until

delivered to the administratrix.  Mr. Grigsby's conduct in this regard is a violation of Rule

3.3(a)

### Rule 8.1(b), MRPC

Rule 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not

knowingly fail to respond to a lawful demand for information from a disciplinary authority.

Mr. Grigsby refused to respond to four informal Bar Complaints despite demand from the

Bar that he do so.  He also failed or refused to provide his trust account records to the

Bar as requested in discovery.  Mr. Grigsby's conduct is a violation of Rule 8.1(b).

### Rule 8.4(a), MRPC

Rule 8.4(a) provides that it is professional misconduct for a lawyer to violate or

attempt violate the rules of professional conduct.  The above described conduct is a

violation of Rule 8.4(a).

### Rule 8.4(d)

10

Ms Bar v. Grigsby                                        Opinion and Final Judgment

Within these criteria the Court has used the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") which includes:

(a)     the duty violated;

(b)     the lawyer's mental state;

(c)     the actual or potential injury resulting from the misconduct; and

(d)     the existence of aggravating or mitigating factors.

*L.S. v. Miss. Bar*, 649 So.2d 810, 815 (Miss. 1997); *Goodsell v. Miss. Bar*, 667 So.2d 7 (Miss. 1996).

The nature of Mr. Grigsby's misconduct and the duty violated involve his ethical duties to his clients, the estate of Mary Neal, and includes his duty to preserve clients' property. Mr. Grigsby's misconduct also involves his duties to the public to maintain personal integrity and to the legal system to refrain from false statement, fraud and misrepresentations. The nature of misconduct and the lawyer's mental state at the time of his conduct are necessarily intertwined. Acting knowingly is defined by the ABA Standards as acting with conscious awareness of the attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

ABA Standard 4.11 provides disbarment is generally appropriate when a lawyer knowingly converts client property and cause injury or potential injury to a client. Mr. Grigsby converted the estate funds and used those converted funds for his own benefit. Mr. Grigsby also failed to maintain proper trust account records in order to identify what money belonged to who at any given time. Mr. Grigsby initially falsely represented to the Chancery Court of Claiborne County and to this Tribunal that the timber proceeds were placed in his trust account and remained there until tendered to the administratrix of the

12

Ms Bar v. Grigsby                                                    Opinion and Final Judgment

estate of Mary Neal. Mr. Grigsby only admitted that the timber proceeds were never placed in a trust account and that he actually converted these estate funds after lengthy questioning at trial and faced with the request that he authorize the Bar to obtain his records directly from the Banks. The heirs of Mary Neal have also lost the use of funds rightfully belonging to them from the timber sale. The loss of funds even temporarily constitutes an actual injury. *McIntyre*, 38 So. 3d at 627. While Mr. Grigsby eventually restored the estate proceeds, he did so only after having been ordered to do so by the Chancery Court. In order to avoid being discovered at that time, he was forced to borrow the funds by borrowing the funds from a line of credit and a joint account with his mother.

And, ABA Standard 6.11 states disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes a significant or potentially significant adverse effect on the legal proceeding. Mr. Grigsby's false statements to the Chancery Court and this Tribunal were designed to mislead both into believing that the timber proceeds had been placed in his trust account and safekept when they were not. Such was also done to conceal from both that he had, in fact, converted the funds own benefit which were entrusted to him.

Preserving the dignity of the profession and protecting the public are serious considerations in this case. A lawyer who fails in his duty to safekeep client property and converts funds, even temporarily, for his own use strikes at the very heart of what it is that lawyers do—serve and protect their clients. The public must be protected from lawyers who fail to safekeep client property and convert client funds for personal use. Further,

13

Ms Bar v. Grigsby                                                    Opinion and Final Judgment

the public and legal profession must be able to rely on the statements of lawyers made under oath.

As to discipline imposed in other cases, the Supreme Court of Mississippi has not extended leniency to attorneys who mishandle and converted client funds. In fact, the Court has repeatedly disbarred lawyers for as little as one instance of misappropriation. In *Cotton*, the Court disbarred the attorney for one instance of misappropriation even though the money was eventually restored to the client. *Cotton v. Miss. Bar*, 809 So. 2d at 586. Similarly, in *Haimes*, the Court found disbarment the appropriate sanction for one instance of mishandling guardianship funds. *Haimes v. Miss. Bar*, 601 So. 2d 851 (Miss. 1992). In *Foote*, the Court disbarred an attorney with no previous disciplinary history for misappropriation, despite restitution and the attorney's cooperation in the disciplinary proceeding. *Foote v. Miss. State Bar Ass'n*, 517 So. 2d 561 (Miss. 1987). Most recently the Court reaffirmed its position that disbarment is the appropriate sanction for commingling and misappropriation in *McIntyre*, finding the violation "goes to the very heart of [a lawyer's] ability to practice law and to be put in a position of trust." *McIntyre v. Miss. Bar*, 38 So. 3d at 626.

For the most part the Court's leniency, to the extent there is any, results in a three-year suspension. *See Miss. Bar v. Sweeney*, 849 So. 2d 884 (Miss. 2000); *Miss. Bar v. Coleman*, 849 So. 2d 867 (Miss. 2002); *Miss. Bar v. Odom*, 566 So. 2d 712 (Miss. 1990). The Tribunal is aware of two cases, other than a reciprocal discipline case, in which the Court imposed less than a three-year suspension for misappropriation. In *Catledge*, the attorney was suspended for only ninety days because funds were available at all times to make the client whole. *Catledge v. Miss. Bar*, 913 So. 2d 179 (Miss. 2005). However,

14

Ms Bar v. Grigsby                                    Opinion and Final Judgment

Ms Bar v. Grigsby

this case appears to be an outlier, and Mr. Catledge later irrevocably resigned his bar membership in a subsequent disciplinary proceeding. *Miss. Bar v. Catledge* 2008-B-1328 (July 13, 2009).

In *Ogletree*, the Tribunal suspended an attorney who commingled funds for six months and the Court affirmed that suspension. *Miss. Bar v. Ogletree*, Miss. S.Ct. No. 2013-BA-01276-SCT (March 5, 2015). The Court found the suspension sufficient given a lack of egregious intentional conduct on the part of Mr. Ogletree. Egregious conduct involves "dishonesty, misrepresentation to his client, lying to disciplinary authorities or systematic diversion of the clients' fund for personal purposes." *Id. citing Pels*, 708 So. 2d at 1375. Mr. Grigsby's case however does contain exactly the type of egregious conduct outlined by the Court in *Ogletree*. The Tribunal finds that Mr. Grigsby's conduct clearly involves "dishonesty, misrepresentation to his client, lying to disciplinary authorities or systematic diversion of the clients' fund for personal purposes." Mr. Grigsby misrepresented to the Chancery Court that the timber proceeds were placed in his trust account and remained there until delivered to the administratrix. Mr. Grigsby appears to have systematically place all funds into his operating account despite the ownership of those funds. Mr. Grigsby lied to this Tribunal when he continued to maintain that the timber proceeds were placed in his trust account and held there until disbursement to the administratrix, only to admit later that he had in fact converted the funds belonging to the estate of Mary Neal to pay business and other clients' expenses.

The ABA Standards for Imposing Lawyer Sanction list the following factors that may be considered in aggravation:

(a) Prior disciplinary offenses;

15

Ms Bar v. Grigsby                                        Opinion and Final Judgment

(b) Dishonest or selfish motive;

(c) A pattern of misconduct;

(d) Multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing

to comply with rules of orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the law;

(j) indifference to making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

Multiple aggravating factors are present in this case. Mr. Grigsby demonstrated a selfish motive in using client funds to pay business and other clients' expenses. Mr. Grigsby's misconduct related to the complaints of Mr. Washington, Mr. Haynes and Mr. Evans represents a pattern of misconduct and multiple offenses of refusing to respond to the Bar's demands for information. Mr. Grigsby's failure to produce his trust account records even after a motion to compel, order compelling, and failure to respond in any way to four informal Bar complaints constitutes a bad faith obstruction of the disciplinary proceeding. Mr. Grigsby's initial misrepresentation to the Tribunal that the timber proceeds were placed in his trust account and remained in his trust account is the submission of a false statement during the disciplinary process. And finally, Mr. Grigsby's

16

conversion of his clients' funds and multiple instances of lying under oath both to the Chancery Court and the Tribunal can only be described as the most severe misconduct.

The ABA Standards for Imposing Lawyer Sanctions also provides factors that may be considered in mitigation:

    (a) absence of a prior disciplinary record;

    (b) absence of a dishonest or selfish motive;

    (c) personal or emotional problems

    (d) timely good faith effort to make restitution or to rectify consequences of misconduct;

    (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

    (f) inexperience in the law;

    (g) character or reputation;

    (h) physical disability;

    (i) mental disability or chemical dependency including alcoholism or drug abuse when:

        (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

        (2) the chemical dependency or mental disability caused the misconduct;

        (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

Ms Bar v. Grigsby                                          Opinion and Final Judgment

(4) the recovery arrested the misconduct and recurrence of that

misconduct is unlikely

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse

(m) remoteness of prior offenses.

While Mr. Grigsby provided no evidence of any mitigating factors at trial, the Bar does acknowledge that Mr. Grigsby has no prior disciplinary history.

Having considered the *Liebling* factors, the aggravating and mitigating factors, the Complaint Tribunal finds that Mr. Grigsby should be disbarred effective on the date the Opinion and Final Judgment is entered according to the Rules of Discipline for the Mississippi State Bar.

Within thirty days from the date of the final Opinion and Judgment is entered in this case, Mr. Grigsby shall notify in writing all of his clients with active matters pending that he has been disbarred and advise each of them that he is unable to act as an attorney on their behalf. He shall further return all files to such clients or the counsel for such clients upon request. Mr. Grigsby shall also notify in writing all parties opposite as well as courts and agencies in which he has active cases that he has been disbarred. Mr. Grigsby shall file a certificate with the Clerk of the Supreme Court that he has complied with these provisions of the Opinion and Judgment within thirty days of the date of entry of the Opinion and Judgment.

Mr. Grigsby shall be prohibited from practicing law or holding himself out as a lawyer until such time as he has been reinstated by the Mississippi Supreme Court.

18

Ms Bar v. Grigsby                                    Opinion and Final Judgment

Mr. Grigsby must apply for reinstatement pursuant to the Rules of Discipline for the Mississippi State Bar. In order for Mr. Grigsby to be eligible for reinstatement he must have complied with all terms of this Order.

The Clerk of the Supreme Court shall forward copies of the Opinion and Judgment to each member of the Complaint Tribunal; to counsel for all parties; to the Executive Director of the Mississippi Bar; to all Circuit, Chancery, and County Court judges in Hinds County, Mississippi; to the Clerks of the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi; to the Clerks of the United States District Courts for the Northern and Southern Districts of Mississippi; to the Clerk of the United States Court of Appeals for the Fifth Circuit; to the Clerk of the United States Supreme Court.

Each member of the Tribunal concurs in this Opinion and Judgment.

SO ORDERED and ADJUDGED, this the 14 day of November, 2017.

Hon. David H. Strong, Presiding Judge

Warren Conway, Tribunal

Tim C. Holleman, Tribunal

19

Ms Bar v. Grigsby

Opinion and Final Judgment